[Cite as *In re Adoption of A.L.S.*, 2018-Ohio-507.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| IN RE: | : | |
| ADOPTION OF A.L.S. | : | CASE NO. CA2017-09-146 |
| | : | O P I N I O N<br>2/9/2018 |
| | : | |
| | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PA16-08-0093


Donald J. Meyer, Jr., 1005 Harrison Avenue, Harrison, Ohio 45030, for appellant-respondent

Barbara Thornell Ginn, 8595 Beechmont Avenue, Suite 103, Cincinnati, Ohio 45255, for appellees-petitioners.


**PIPER, J.**

{¶ 1} Respondent-appellant, A.N.D. ("Mother"), appeals a decision of the Butler County Court of Common Pleas, Probate Division, granting the petition of petitioners-appellees, G.G.S. and S.F.S. ("Petitioners"), for adoption of Mother's minor child, A.L.S.[1]

{¶ 2} Mother was 17 years old when she gave birth to A.L.S. on September 13, 2012. At the time of A.L.S.'s birth, Mother resided at a children's home in Wooster, Ohio. A.L.S.

---
1. A.L.S.'s biological father, C.P., did not appeal the probate court's decision.

was initially placed in independent foster care alongside her older brother. During this placement, Mother attended scheduled visitation with the two children and completed parenting classes. Mother and the two children moved to independent living at her grandmother's residence in January 2013. When mother reached the age of majority in February 2013, the juvenile court awarded Mother custody of her children. In September 2013, while appearing at a hearing in the Hamilton County Juvenile Court, Mother indicated she was afraid for her safety and her children's safety due to her assistance with an investigation by the Federal Bureau of Investigation. Mother also acknowledged she had been driving the children without a valid driver's license.

{¶ 3} Following the hearing, the Hamilton County Juvenile Court placed the two children with Mother's grandmother. Mother often visited the children during this period. In October 2013, the juvenile court placed A.L.S. with Petitioners, the child's paternal great-grandparents. On February 14, 2014, with Mother's consent, the juvenile court awarded legal custody of A.L.S. to Petitioners. The order provided Mother have reasonable visitation. In April 2014, Mother visited A.L.S. at her grandmother's residence. After this visitation, neither Mother nor Petitioners arranged for any further visitation. The parties provided conflicting testimony regarding Mother's efforts to arrange visitation.

{¶ 4} Mother testified she had varying success in contacting Petitioners and was often rebuffed in any efforts to schedule visitation. Petitioners testified Mother only contacted them three times in the 26 months following the grant of legal custody. In 2014, Mother twice left telephone messages requesting visitation. However, Mother failed to provide any contact information so that visitation could be arranged. Petitioners testified more than a year passed before any further contact occurred. Mother had several different telephone numbers and resided in Ohio, Nevada, California, and Kentucky. Petitioners have resided at the same residence and maintained the same telephone number throughout the pendency of this case.

- 2 -

{¶ 5} On June 8, 2016, Mother filed a petition for custody of A.L.S. in the Hamilton County Juvenile Court. On August 2, 2016, Petitioners filed a petition to adopt A.L.S. in the Butler County Probate Court. The adoption petition alleged that Mother's consent was unnecessary because Mother failed, without justifiable cause, (1) to have more than de minimis contact with A.L.S. in the year preceding the filing of the petition and (2) to maintain or support A.L.S., as required by law or judicial decree, in the year immediately preceding the filing of the petition.

{¶ 6} On November 8, 2016, the probate court held a hearing on the adoption petition. At the conclusion of the hearing, the judge recused himself and the case was transferred to a different judge. The attorneys for the parties stipulated that the new judge could review the record of the hearing and take judicial notice of the evidence presented. On March 21, 2017, the court held an additional hearing on the adoption petition. On September 5, 2017, the probate court granted Petitioners' adoption petition, finding Mother's consent unnecessary and adoption in the best interest of A.L.S.

{¶ 7} Mother timely appealed this decision.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED BY FINDING BY CLEAR AND CONVINCING EVIDENCE THAT RESPONDENT, A.N.D., FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE MINOR, A.L.S[.] FOR A PERIOD OF AT LEAST ONE YEAR IMMEDIATELY PRECEDING EITHER THE FILING OF THE ADOPTION PETITION OR THE PLACEMENT OF THE MINOR IN THE HOME OF PETITIONER[S]. R.C. 3107.07(A)[.]

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TR[IA]L COURT ERRED BY FINDING BY CLEARING AND CONVINCING EVIDENCE THAT RESPONDENT A.N.D. FAILED WITHOUT JUSTIFIABLE CAUSE TO

PROVIDE FOR THE MAINTENANCE AND SUPPORT OF THE MINOR AS REQUIRED BY LAW OR JUDICIAL DECREE FOR A PERIOD OF AT LEAST ONE YEAR IMMEDIATELY PRECEDING THE FILING OF THE PETITION IN THIS PROCEEDING[.] R.C. 3107.07(A).

{¶ 12} Mother contends the probate court erred in finding she failed, without justifiable cause, to have more than de minimis contact with A.L.S. for a period of at least one year immediately preceding the filing of the adoption petition. Mother argues she satisfied the communication requirement of R.C. 3107.07(A) because Petitioners rebuffed her repeated attempts to contact A.L.S. and she filed her petition for custody prior to the filing of the adoption petition. Mother further contends the probate court erred in finding she failed, without justifiable cause, to provide for the maintenance and support of A.L.S. for a period of at least one year immediately preceding the filing of the adoption petition. Specifically, Mother argues the probate court erred by finding such failure was not a result of justifiable cause. Collectively, Mother claims the probate court erred in finding her consent was not required for adoption based on the foregoing arguments.[2]

{¶ 13} The right of natural parents to the care and custody of their children is one of the most precious and fundamental in law. *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 10. Therefore, "[b]ecause adoption terminates these

---

2. Mother contends the probate court erred in granting the adoption petition because her custody action was filed in the juvenile court approximately two months prior to the filing of the adoption petition. We note Mother raised this argument in her reply brief, but failed to raise it in her original brief on appeal. Therefore, we need not address it. *Meadowwood Manor, Inc. v. Ohio Dept. of Health*, 12th Dist. Brown No. CA2006-08-010, 2007-Ohio-2067, ¶ 27. Nonetheless, we find Mother's contention without merit based on the current precedent of this district and the particular facts of this case. *See In re M.G.B.-E.*, 12th Dist. Clinton No. CA2016-06-017, 2016-Ohio-7912, ¶ 45-49 (applying Ohio Supreme Court precedent to hold that a probate court need only refrain from exercising its authority to rule on an adoption petition without the consent of a parent when questions of parentage are pending in a juvenile court), *discussing In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572.

- 4 -

rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists." *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5.

{¶ 14} R.C. 3107.07(A) governs consent to adoption and provides consent is not necessary from "[a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶ 15} Thus, pursuant to the statute, "the burden is on the petitioner to establish by clear and convincing evidence that (1) the parent has failed to provide more than de minimis contact with the child or to provide maintenance or support for the child for the requisite one-year period and (2) that the failure was without justifiable cause." *In re M.G.B.-E.*, 12th Dist. Clinton No. CA2016-06-017, 2016-Ohio-7912, ¶ 56.  Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.  Once the petitioner demonstrates the parent's failure under the statute, "the opposing parent must show some facially justifiable cause for such failure.  * * *  The burden of proof, however, remains with the petitioner." *In re M.G.B.-E.* at ¶ 56.

{¶ 16} A probate court has broad discretion in making the factual determinations under the first step in the statutory analysis and these factual findings will not be disturbed absent an abuse of discretion. *Id.* at ¶ 57.  An abuse of discretion is more than an error of law or

judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 17} If a probate court makes a finding that the parent failed to support or contact the children, the probate court must next determine whether the petitioner demonstrated a lack of justifiable cause for the failure by clear and convincing evidence. *In re M.G.B.-E.* at ¶ 57. This determination "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 24. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial." (Internal quotations omitted.) *In re Adoption of L.C.W.,* 2015-Ohio-61 at ¶ 14. In so doing, we must be mindful the probate court "is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *In re Adoption of C.A.L.,* 12th Dist. Clermont No. CA2015-01-010, 2015-Ohio-2014, ¶ 29.

{¶ 18} The probate court determined that Mother's consent to the adoption was not necessary because Mother failed, without justifiable cause, to have more than de minimis contact with A.L.S. for a period of at least one year immediately preceding the filing of the adoption petition. Mother does not dispute proper service of notice and of the hearing date. Therefore, the dispute only concerns the probate court's factual findings. Mother contends she had more than de minimis contact with A.L.S. and any circumstances suggesting otherwise are based on justifiable cause due to the substantial interference of Petitioners.

{¶ 19} Mother argues our opinion in *In re Adoption of A.J.B.*, 12th Dist. Butler No. CA2008-12-306, 2009-Ohio-2200, stands for the proposition that her filing of the custody petition satisfied her communication requirement, and thus, her consent to the adoption was necessary. In *A.J.B.*, we found a father's pending motion for allocation of parental rights and responsibilities preserved the necessity of his consent. *Id.* at ¶ 27. Shortly after the filing of the father's motion, the mother married her live-in boyfriend who then filed an adoption petition for the child. *Id.* at ¶ 4.

{¶ 20} Contrary to Mother's claim, our holding in *A.J.B.* should not be construed as establishing a bright-line rule that the filing of a motion related to parenting or custody constitutes more than de minimis contact pursuant to R.C. 3107.07(A). Rather, parentage motions differ from custody motions and impact adoption proceedings differently. *See generally In re H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476. Further, our opinion in *A.J.B.* specifically distinguishes cases with different factual situations. *See A.J.B.* at ¶ 17-24, distinguishing *In re Adoption of Doyle*, 11th Dist. Ashtabula Nos. 2003-A-0071 and 2003-A-0072, 2004-Ohio-4197 and *In re Serre*, 77 Ohio Misc.2d 29 (C.P.1996). In *A.J.B.*, this court focused on the timing of a series of events leading up to the filings, specifically noting that the mother was served in the father's parentage action before placement occurred. *In re A.J.B.* at ¶ 24. More akin to the circumstances in *Doyle* and *Serre*, Petitioners had placement of A.L.S. with them for approximately three years before Mother's motion for custody. Therefore, our holding in *A.J.B.* is distinguishable from the facts of this case.

{¶ 21} The probate court did not abuse its discretion in finding Petitioners presented clear and convincing evidence that Mother failed, without justifiable cause, to have more than de minimis contact with A.L.S. Each Petitioner testified Mother failed to exercise her visitation rights after April 2014. While Petitioners were not aggressive in facilitating contact between Mother and A.L.S., they attempted to return Mother's telephone messages and tried

to setup meetings with Mother. However, Petitioners faced difficulties in contacting Mother, as she had multiple phone numbers and addresses during the relevant period. Petitioners further testified that Mother never attempted to finalize arrangements to meet with Petitioners despite the known placement of A.L.S. with Petitioners and the ability and knowledge of how to contact them. *See In re Adoption of J.F.R.-W.*, 7th Dist. Belmont No. 16 BE 0045, 2017-Ohio-1265, ¶ 44-45 (stating non-custodial parent's knowledge of residence of child weighs heavily against finding custodial parent prevented contact); *see also In re Adoption of P.L.H.*, Slip Opinion No. 2017-Ohio-5824, ¶ 33-38 (finding putative father did not willfully abandon birth mother when he offered financial support during pregnancy, maintained communication with numerous text messages, including exchanging "I love yous" and providing assurances of support, and demonstrated continued involvement throughout the pregnancy).[3] Therefore, the probate court did not abuse its discretion in finding that Petitioners presented clear and convincing evidence that Mother failed to have more than de minimis contact with A.L.S.

{¶ 22} We defer to the probate court in determining factual disputes, such as the lack of Mother's contact and the cause for communication failures. As explained above, Mother testified regarding several unreturned telephone calls. However, Petitioners testified Mother's attempted contact was sporadic and infrequent. Petitioners attempted to return phone calls when possible, but faced difficulty because mother's telephone number and address often changed and she frequently failed to provide new contact information. Mother attempted to persuade the court her failure to have more than de minimis contact with A.L.S. was due to Petitioners' interference with attempted communication.

{¶ 23} The Ohio Supreme Court has held that "[s]ignificant interference by a custodial

---

3. We note *P.L.H.* involves the question of whether a putative father willfully abandoned a birth mother, whereas the present case involves the issue of whether a mother had more than de minimis contact with her child. The two questions require the weighing of a different set of facts by a court in making its findings.

parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph three of the syllabus, *superseded by statute on other grounds as stated by In re Adoption of T.R.S.*, 7th Dist. Belmont No. 13 BE 43, 2014-Ohio-3808, ¶ 16-17. Where a custodial parent's substantial efforts have "deprived the non-custodial parent of the opportunity of enjoying a meaningful relationship with his [or her] child * * * the law should not further reward [the custodial parent's] discordant efforts by countenancing a termination of the non-custodian's parental rights in a non-consensual adoption proceeding." *In re M.G.B.-E.*, 2016-Ohio-7912, ¶ 61. A probate court is not restricted to focusing solely on the one-year statutory period in making such determination. *Id.*

{¶ 24} It is clear Mother's credibility repeatedly became an issue while testifying at the hearings. Mother testified that adoption should not be granted because of racial issues. While the probate court acknowledged Mother's racial concerns, it determined that there was "no evidence" presented to support her suggestion that such issues existed. Shortly thereafter, Mother refused to address a question posed by the probate court. In response, the probate court found it necessary to instruct her to answer. Additionally, in response to Mother testifying inconsistently with her prior testimony, the court found it necessary to remind Mother that she was under oath. Therefore, the probate court clearly identified issues with respect to Mother's testimony.

{¶ 25} The probate court weighed the conflicting evidence, observed the demeanor of the parties, and assessed the credibility and accuracy of the testimony. Petitioners testified they had legitimate concerns regarding Mother's contact with A.L.S. considering the large gaps in communication, and therefore, wanted to meet with Mother before scheduling visitation. Petitioners explained Mother never followed up with their request and even when

Mother left messages, she failed to provide necessary contact information for Petitioners to return her calls.

{¶ 26} During the entire pendency of the case, Mother had knowledge of Petitioners' address and contact information. Mother knew where A.L.S. was residing, but did not seek to assert her visitation rights at any point during A.L.S.'s placement with Petitioners beyond a few sporadic telephone messages. Even assuming a lack of consistency or urgency by Petitioners in returning phone calls, the communication issues between Mother and Petitioners do not equate to a substantial interference providing justifiable cause for Mother's failure to have more than de minimis contact. Therefore, the probate court's finding that Petitioners presented clear and convincing evidence that Mother did not have justifiable cause in failing to have more than de minimis contact with A.L.S. is not against the manifest weight of the evidence.

{¶ 27} We next turn to Mother's maintenance and support argument. Mother argues her pregnancy with another child prevented her from providing maintenance and support for A.L.S., but articulated no information as to why her pregnancy prevented her from providing maintenance and support. Considering we found the probate court did not err with respect to its de minimis contact finding, we find Mother's maintenance and support argument moot. R.C. 3107.07(A) provides a parent's consent to adoption is not necessary if the probate court finds that the petitioners demonstrated by clear and convincing evidence "that the parent has failed without justifiable cause to provide more than de minimis contact with the minor *or* to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *." (Emphasis added.)

{¶ 28} Accordingly, Mother's first and second assignments of error are overruled.

{¶ 29} Assignment of Error No. 3:

- 10 -

**{¶ 30}** THE [PROBATE] COURT'S DECISION THAT IT IS IN THE BEST INTEREST OF A.L.S. PURSUANT TO R.C. 3107.161(B) TO GRANT THE ADOPTION PETITION HEREIN IS CONTRARY TO THE WEIGHT OF THE EVIDENCE.

**{¶ 31}** Mother argues the probate court's best interest finding was against the manifest weight of the evidence.

**{¶ 32}** A trial court's determination regarding the best interest of a child in an adoption proceeding must be made after consideration of the factors provided in R.C. 3107.161. *In re Adoption of A.M.L.*, 12th Dist. Warren No. CA2015-01-004, 2015-Ohio-2224, ¶ 9. According to this provision:

> the court shall consider all relevant factors, which include, but are not limited to, all of the following:
>
> (1) The least detrimental available alternative for safeguarding the child's growth and development;
>
> (2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
>
> (3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
>
> (4) The duration of the separation of the child from a parent;
>
> (5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
>
> (6) The likelihood of safe reunification with a parent within a reasonable period of time;
>
> (7) The importance of providing permanency, stability, and continuity of relationships for the child;
>
> (8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

- 11 -

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected [or other specific crimes].

R.C. 3107.161(B).

{¶ 33} The person contesting an adoption petition has the burden of providing "material evidence needed to determine what is in the best interest of the child" and the burden of establishing "that the child's current placement is not the least detrimental available alternative." R.C. 3107.161(C). For these purposes, "least detrimental available alternative" means "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A). However, the petitioner retains the burden of proving that adoption is in the best interest of the child.

{¶ 34} We will not reverse a probate court's best interest determination unless the probate court abused its discretion. *In re Adoption of Cotner*, 12th Dist. Fayette Nos. CA2002-02-004 and CA2002-02-005, 2002-Ohio-5145, ¶ 7. The probate court need not enumerate its findings for each factor, but the probate court's decision must clearly indicate that it considered the statutory factors. *In re Adoption of A.M.L.* at ¶ 11.

{¶ 35} Mother contends the probate court's best interest finding was against the manifest weight of the evidence because she has two other children in her care, her caseworker did not notice neglect while observing her care for such children, and she desires to parent and provide for A.L.S.

{¶ 36} In its decision, the probate court listed the statutory best interest factors and indicated that it had considered the factors in determining whether the adoption was in

A.L.S.'s best interest. The probate court reviewed the evidence presented and determined that granting the adoption petition was in the child's best interest.

{¶ 37} The probate court noted that as of the date of its adoption decision, A.L.S. was four and one-half years old, in good physical health, and involved in a number of activities. The probate court conducted an in camera interview with A.L.S. and determined the child was not sufficiently mature to express her wishes regarding the adoption. The probate court found A.L.S. has had sporadic interaction with Mother during the three and one-half years before the filing of the adoption petition and has had no contact since June 2014. The court noted A.L.S. needs permanency and that adoption allows the child "to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the result of prior placements." The probate court found residing with Petitioners was the best living arrangement for A.L.S., and even if the probate court denied the adoption petition, legal custody and placement was unlikely to change, therefore remaining with Petitioners.

{¶ 38} The probate court further found the only practical way to provide A.L.S. with the permanency of a stable home was by granting the adoption petition. The probate court found that A.L.S. is thoroughly integrated into Petitioners' immediate and extended family and the child has adjusted well to her current home, school, and community. The probate court found Petitioners are in good mental and physical health and A.L.S. appears to be truly happy and content.

{¶ 39} Upon consideration of the foregoing, the probate court found the factors weigh heavily in favor of granting the adoption petition. In so doing, the probate court noted only a few factors that weigh against granting the petition. The trial court determined Petitioners demonstrated by clear and convincing that granting the adoption petition was in the best interest of A.L.S.

{¶ 40} After careful consideration of the record in this case, we do not find the probate court abused its discretion in making its best interest determination. A.L.S. has been placed with Petitioners since October 2013 and competent, credible evidence exists to support the probate court's finding that it was unlikely that placement would change even if the adoption did not take place where Mother has unstable housing and several arrest warrants pending. Mother has failed to have more than de minimis contact with the child without justifiable cause, while at the same time, A.L.S. is fully integrated into Petitioners' family and into their home. A.L.S. considers Petitioners as her parents and appears happy and content. A.L.S. needs the stability of a permanent home, and the only way to achieve such is by granting the adoption petition. Therefore, the probate court did not abuse its discretion in granting the adoption petition, and its decision is not against the manifest weight of the evidence.

{¶ 41} Accordingly, Mother's third assignment of error is overruled.

{¶ 42} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.